UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
CARBERT MUSIC, INC. and CARLIN                              :
RECORDED MUSIC LIBRARY LTD.,                                :
                                                            :
                        Plaintiffs,                         :
                                                            :        05 Civ. 9945 (GEL)
                v.                                          :
                                                            :        **OPINION AND ORDER**
DON GREAT, DON GREAT MUSIC,                                 :
TINSELTOWN MUSIC, INC. and ANDREA                           :
GREAT,                                                      :
                                                            :
                        Defendants.                         :
                                                            :
------------------------------------------------------------x

Bonnie Schriefer, Dale M. Cendali, and Claudia
Ray, O'Melveny & Myers LLP, New York, New
York, for plaintiffs.

Don Great, Medford, Oregon, pro se.


GERARD E. LYNCH, District Judge:

        Plaintiffs Carbert Music Inc. and Carlin Recorded Music Library Ltd. (collectively,

"plaintiffs") move for a finding of contempt and other sanctions against defendants Don Great,

his wife Andrea Great, Don Great Music and Tinseltown Music, Inc. (collectively,

"defendants").  The motion will be denied.

                                    **BACKGROUND**

        Plaintiffs brought suit against defendants in November 2005, alleging that defendants had

infringed plaintiffs' copyrights in certain compositions and sound recordings created by GRH

Music Co. ("GRH") between 1958 and 1972 and now owned by plaintiffs.  The complaint

alleged, inter alia, that the defendants had filed "fraudulent" registrations with Broadcast Music, Inc. ("BMI")[1] and the Copyright Office for these works.

Defendants did not answer the complaint.  After lengthy settlement negotiations (which are described in detail in the parties' present submissions, but which have nothing to do with the present motion), plaintiffs sought a default judgment, which was entered on May 30, 2006.  The terms of the judgment generally enjoin defendants and "all persons, firms and corporations acting in concert with them" from infringing plaintiffs' copyrights.  (Order for Default Judgment, May 30, 2006 (the "Order"), ¶ 3.)

Plaintiffs assert that defendants have failed to comply with three provisions of the default judgment order.  Accordingly, they seek an adjudication of contempt, the appointment of a special master, a writ of attachment, and an award of attorney's fees and costs.[2]  Because

---

[1] BMI is a "performance rights organization" which collects and distributes royalties on behalf of songwriters, composers and publishers of music.  The owner of the copyright registers the copyright with BMI, which then collects royalties from the users of the copyrighted material and distributes the royalties to the copyright owner.  See Performance Rights Organisation, http://en.wikipedia.org/wiki/Performance_rights_organisation (last visited February 7, 2007).

[2] The only submissions received from defendants pertaining to this motion are signed by defendant Don Great, who is not an attorney.  Plaintiffs argue that their motion should be treated as unopposed as to the other three defendants because Great's submissions do not purport to be on behalf of defendant Andrea Great and cannot be on behalf of defendants Don Great Music and Tinseltown Music, Inc., which are "business entities" that may not appear pro se or be represented by a non-lawyer.  (P. Reply 1 n.1.)  The record does not make clear whether defendant Don Great Music is a corporation or a sole proprietorship.  (See Compl. ¶ 9.)

It is not necessary to resolve these issues, because the submissions by Great are in the form of declarations submitted under penalty of perjury.  There are no legal issues in dispute between the parties, and the Great declarations contain factual assertions relevant to all defendants; they will therefore be considered in that limited context.  Moreover, it would be inappropriate to treat the plaintiffs' motion as unopposed and grant the requested relief against the defendants other than Great because, as will be explained, the plaintiffs' motion fails to establish a sufficient basis for sanctions.

plaintiffs offer no adequate factual basis for their suspicions that defendants are not in

compliance with the Order, their motion will be denied.

**DISCUSSION**

**I.    Standards for Contempt and Sanctions**

"It is well settled in this circuit that a party may be held in civil contempt for failure to

comply with an order of the court if the order being enforced is clear and unambiguous, the proof

of noncompliance is clear and convincing, and the defendants have not been reasonably diligent

and energetic in attempting to accomplish what was ordered.  It is not necessary to show that

defendants disobeyed the district court's orders willfully."  EEOC v. Local 638, Local 28 of

Sheet Metal Workers' Int'l Ass'n, 753 F.2d 1172, 1178 (2d Cir. 1985), aff'd, 478 U.S. 421

(1986) (citations and internal quotation marks omitted).  Coercive sanctions may be imposed

when, in "the informed discretion of the district court," it appears that the sanction "is reasonable

in relation to the facts."  N.Y.S. Nat. Org. for Women v. Terry, 886 F.2d 1339, 1353 (2d Cir.

1989).

**II.    Withdrawal of Fraudulent Applications**

The Order directs defendants and their "agents, servants, employees, attorneys,

successors and assigns, and all persons, firms and corporations acting in concert with them" to

"withdraw or otherwise correct all of Defendants' fraudulent registrations with BMI and the

Copyright Office" for the works in question.  (Order ¶ 4.)  Plaintiffs claim that defendants have

violated this provision of the order in three separate ways.

3

A.      The MLM Registrations

Plaintiffs' principal complaint seems to be defendants' failure to disclaim registrations made by May-Loo Music, Inc. ("MLM"), a non-party whose relationship to defendants is not clear.[3]  (P. Mem. 9.)  MLM, however, is not named as a defendant in this action, mentioned in the Complaint, or referred to in the Order, and defendants assert that they have "no right to release or disclaim MLM's interest" in the GRH works.  (Great Decl. 6.)

Plaintiffs' only evidence that the defendants have the present capacity to correct any misrepresentations or improper registrations in MLM's name is the fact that "Defendants *already signed* letters to [various performance rights organizations] in which Defendants disclaim *all* right, title and interest to the GRH Works."  (P. Mem. 16 (second emphasis added).)  The letters cited, which were apparently signed but never delivered by defendants, do not disclaim MLM's rights in the works, or even mention MLM.  (Schriefer Decl. Ex. E.)

Plaintiffs are correct that the Order requires defendants to disclaim all registration of the GRH works, which presumably would include registrations under false or alternate names.  There appears to be no disagreement between the parties as to the requirements of the Order; nowhere have defendants disputed that they would be required to withdraw registrations made under a different name than their own.  But plaintiffs have included no evidence that the defendants have the power to withdraw a registration in MLM's name, or indeed any evidence whatsoever throwing light on the relationship between the defendants and MLM.  Nor have

---

[3] Plaintiffs assert that defendants "have only withdrawn certain claims to the GRH Works," and that defendants admit this to be the case, but the cited passage in defendants' "Report in Compliance With Order" admits no such thing.  (Report in Compliance With Order, Aug. 3, 2006, Doc. # 12 (the "Report"), at 4.)

4

plaintiffs produced "clear and convincing" evidence showing that defendants have registered any works under the name MLM.  Accordingly, plaintiffs have made no showing that sanctions are appropriate on this basis.

**B.     Registrations With BMI and the Copyright Office**

One of the exhibits included with plaintiffs' submissions is a letter to BMI, signed by defendants, which plaintiffs assert "would remedy Defendants' violation of the default order if it is sent to BMI."  (P. Mem. 9, discussing Schriefer Decl. Ex. E.)  A similarly satisfactory letter to the Copyright Office, according to plaintiffs, was drafted but never signed.  (P. Mem. 9, discussing Schriefer Decl. Ex. E.)

Also in the record, however, is a letter sent by email from defendants to BMI, stating that they "hereby withdraw any claim" to the relevant works.  (Great Decl. Ex. 1.)  Plaintiffs offer no reason to believe this email was not actually sent and do not point to any specific inadequacy in the letter.  In their reply memorandum, plaintiffs do not address this email or offer any reason to think it was insufficient as to the works whose registration it purports to withdraw.

Defendants do not submit any correspondence to the U.S. Copyright Office withdrawing any claim.  Plaintiffs, however, have offered no evidence to refute Great's contention that defendants have no registrations with the Copyright Office.  (Great Decl. 5.)  Thus, plaintiffs have failed to show clear and convincing evidence that there are any undisclaimed registrations in their name.

**C.     Registrations with ASCAP, SESAC, and the Harry Fox Agency**

Plaintiffs allege that defendants have failed to withdraw or correct fraudulent registrations of the GRH works that they submitted to the American Society of Composers,

Authors & Publishers ("ASCAP"), SESAC, Inc., and the Harry Fox Agency, Inc.[4]

The Order never mentions these organizations, but paragraph 3 enjoins defendants from "directly or indirectly infringing Plaintiffs' copyrights, including . . . continuing to promote, license or register the GRH Works." The prohibition on "continuing to . . . register" the works is not limited to BMI, so it seems fair to read the Order to require that defendants withdraw any registration with organizations other than BMI and the Copyright Office.

Great asserts, however, that defendants "have never signed and submitted a written registration form or signed and submitted any music clearance form to any other performance society or entity throughout the world for any of the music Plaintiffs purport to own." (Great Decl. 5.) He further assert that the defendants have written to the three entities at issue "notifying them that no registrations have been made relative to the music." (Id.)

Plaintiffs submit three signed letters from defendants — one to each of the entities at issue — disclaiming all claims to the GRH works. (Schrieber Decl. Ex. E.) They contend that "if these letters were sent" then defendants would be in compliance with paragraph 3 of the Order. (P. Mem. 8.) They give no evidence, however, that the letters were not sent or that defendants in fact have registered any of the works with the entities in question. As was the case with BMI, the record contains an email from the defendants to individuals at each of the three entities, again disclaiming any interest in the works. Plaintiffs again make no suggestion that this email would be insufficient to renounce any registration if such a registration existed, and offer no evidence that defendants have any registrations with the three entities in question.

---

[4] These entities are performance rights organizations similar in function to BMI. See supra n.1.

6

Plaintiffs, in short, have failed to point to any clear and convincing evidence that defendants have continued to register any of the GRH works with the ASCAP, SESAC, or the Harry Fox Agency.  Therefore, their motion for sanctions on this ground will be denied.

## III.   Materials Related to the GRH Works

The Order requires that the defendants

> deliver to Plaintiffs all materials related to GRH Music in their possession, including analog and digital sound carriers of any kind; all compact discs; DAT tapes; LP discs; audio cassettes; audio master tapes and reels; audio copy master tapes and reels; edited versions of any and all of the foregoing; compilations of any and all of the foregoing on any format; sound files; catalog listings; licenses issued for any and all of the foregoing; license agreements relating to any and all of the foregoing; and all paperwork and correspondence, including correspondence with BMI and the Copyright Office, relating to any and all of the foregoing.

(Order ¶ 5.)  Defendants delivered to plaintiffs thirteen boxes of materials pursuant to this paragraph of the Order, stating that this constituted all relevant materials.  (P. Mem. 10.)  Plaintiffs believe, however, that other relevant materials remain in defendants' possession.  They point to three particular items or categories of items which they believe have not been turned over.

First, plaintiffs assert that they are "aware of at least four tapes containing GRH Works that Defendants have failed to deliver."  (P. Mem. 10.)  The tapes in question were delivered to defendant Don Great Music in April 1998 (Dale Decl. ¶¶ 5-6) but never provided to plaintiffs.  (Farries Decl. ¶¶ 7-8).  Great acknowledges that the defendants received the tapes, but claims that the tapes were damaged when received and were therefore destroyed.  (Great Decl. ¶¶ 28-29.)  Plaintiffs offer no evidence to suggest this is untrue, except their contention that Great confirmed receipt of the tapes in 1998 and apparently did not mention that they had been

damaged.  (Dale Decl. ¶ 6.)  The affidavit to which plaintiffs cite, however, does not affirmatively state that Great never mentioned damage to the tapes; it never mentions damage at all.  Even if true, the fact that Great did not complain of the damage at the time is not a sufficient basis to conclude that he is now lying in order to retain possession of tapes which can be of no use to him.

Second, plaintiffs contend that defendants have failed to provide them with license agreements for the GRH works.  (P. Mem. 11.)  Great states that there was only one client who licensed any of the GRH works, and that that entity, Kaleidosound, was actually a client of MLM's.  (Great Decl. 7.)  Although defendant Tinseltown Music, Inc. did "administer" this client "for a short time," there were therefore no license agreements to which defendants were parties.  (Id.)  Plaintiffs offer no evidence to the contrary.

Third, plaintiffs believe that defendants have withheld correspondence with BMI and the Copyright Office regarding their registration of GRH works.  (P. Mem. 10-11.)  Again, they have no direct evidence to support their suspicions, but argue that "[g]iven the fact that Defendants registered more than 1,800 GRH Works with BMI and the Copyright Office, it is inconceivable that Defendants do not have *any* correspondence with BMI and the Copyright Office regarding those registrations" and that "Defendants must also have paperwork relating to their fraudulent registration and licensing of the GRH works, such as royalty statements from the third parties to whom Defendants licensed the GRH Works."  (Id. at 10-11.)  These truths are not self-evident. While it may be true as a general matter that business entities usually retain copies of legal documents, this observation is hardly sufficient to support a finding that specific documents have been secreted away by the defendants, contrary to their repeated sworn affirmations.

8

Plaintiffs assert that "Defendants *admit* that they have not delivered to [plaintiffs] all of their paperwork and correspondence with BMI and the Copyright Office." (P. Mem. 11 (emphasis in original).) The document to which they refer is a letter from counsel for defendants to plaintiff's counsel dated August 23, 2006, which states that "[t]he initial submissions to BMI and the copyright office are not in a format that it is possible to segregate what is included with the purported GRH works and what is not." (Schriefer Decl. Ex. S, at 2.) Thus, the letter states, "Defendants . . . prepare[d] a separate and distinct listing and a CD identifying what was communicated to the copyright office and BMI." (Id.)

The Court understands this to mean that defendants made submissions to BMI and the Copyright Office which pertained both to the GRH works and to other works, and that instead of handing these submissions over to plaintiffs in their entirety, defendants provided plaintiffs with a redacted or newly created document pertaining only to the GRH works. The letter further asserts that plaintiffs have "received the critical information necessary for [them] to determine what has been communicated to the copyright office and BMI regarding the purported GRH works." (Id.) The Order, however, requires that documents be handed over, not that plaintiffs be given a summary account of their contents.

If, as appears from this letter, defendants provided only partial versions of documents that pertained to the GRH works, they are not in compliance with the Order, which requires "all paperwork and correspondence, including correspondence with BMI and the Copyright Office, relating to" the works, even if those documents pertain to the works only in part. Providing a newly created document in lieu of the document pertaining to the GRH works would also be a violation of the Order.

It is not clear, however, whether any deviation from the strict terms of the Order was intentional or in any meaningful way detrimental to plaintiffs.  Plaintiffs do not identify the missing documents with any specificity.  The letter to which they refer does not clearly identify the documents, and neither party's motion papers attempt to explain the context of the letter.  Nor do plaintiffs deny that all of the relevant documents are in the public record, as defendants assert (id.), or claim that information pertaining to the GRH works was omitted.  As far as the Court can determine, the only deviation from the Order's terms may be defendants' failure to provide plaintiffs with copies of irrelevant portions of lengthy documents available on the internet.  Even this is only an inference from a letter which neither party's motion papers bother to explain to the Court.  Therefore, the motion for sanctions will not be granted on this basis.

In the interests of clarifying the Order and the obligations of the parties, however, defendants will be directed to provide to plaintiffs within 30 days full, unredacted versions of any documents in their possession pertaining to the GRH works, or provide to the Court and plaintiffs within that time a sworn statement that no such documents are in their possession.

## IV.   Accounting and Disgorgement of Profits

The Order requires defendants "to account for all gains, profits, and advantages derived from their acts of infringement" and to pay over to plaintiffs all "gains, profits and advantages derived from acts of infringement and other violations of law."  (Order ¶¶ 7-8.)  Defendants' "Report in Compliance With Order" states that "Defendants have provided Plaintiffs with an accounting of all known gain, profit and advantage retained by Defendants for the disputed music and have tendered payment to Plaintiffs."  (Report 4-5.)  Plaintiffs point out that profits "retained" are different from profits "derived," and conclude from the language of the Report

that defendants have neither accounted for nor turned over those profits that were *derived* from the acts of infringement but not *retained* thereafter.  (P. Mem. 12.)

Great claims, however, that all profits have been fully accounted for and turned over.  He asserts that the defendants have "provided a complete account of all profits received by Defendants and have tendered payment of all profits received by Defendants to Plaintiffs." (Great Supp. Decl. ¶ 15(d).)  Thus, according to Great, the use of the word "derived" in defendants' compliance report was accidental, without significance, and not intended to suggest any withheld information or funds.

Plaintiffs offer no direct evidence to suggest that defendants have in fact failed to comply with the Order.  Instead, they argue that the Report must have omitted relevant information because it accounts for profits or licenses derived from only 24 GRH works, while 1,876 works were registered.  (P. Mem. 13.)  This is entirely speculative; some pieces of music are profitable or appealing to potential licensees, while many others are not.  Plaintiffs' suspicion that more than 24 of the 1,876 works were licensed or profitable does not constitute clear and convincing evidence of noncompliance.

Finally, plaintiffs protest that the accounting provided to them did not contain an explanation of how the defendants' royalty share was computed.  The text of the order, which was drafted by plaintiffs, requires defendants to "account for" all relevant profits, but does not clearly require that the accounting explain how the royalty share was computed.  It would be unfair to hold the defendants in contempt for failing to provide information not clearly required by the Order.  Plaintiffs have, in short, failed to offer clear and convincing evidence that

defendants are not in compliance with the Order's "clear and unambiguous" terms.  EEOC v. Local 638, 753 F.2d at 1178.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for sanctions (Doc. # 13) is denied.  As discussed above, however, defendants are directed to provide to plaintiffs full copies of any correspondence or other documents that pertain to the GRH works and that have not already been provided to plaintiffs by March 12, 2007, or to report to plaintiffs and the Court by that date that no such documents are in their possession.

SO ORDERED.

Dated: New York, New York
      February 7, 2007

                                         GERARD E. LYNCH
                                United States District Judge